**Ned Bard and Co. v. General Motors Corp.**

*Terry A. Warco,* for plaintiff.

*Patricia Shukis-Fraser,* for defendant General Motors Corp.

GEORGELIS, *J.,* April 12, 1990 — Before the court is the motion for partial summary judgment of defendant, General Motors Corporation. Briefs have been filed, and the motion is, therefore, ready for disposition. For the reasons stated below, it will be granted.

This is an action in which plaintiff seeks to recover the value of its Peterbilt tractor, which, on April 22, 1987, while it was parked, caught fire and was totally destroyed as the result of an electrical fire. The complaint alleges that the tractor was manufactured and sold by defendant Peterbilt Motors Company, which, in manufacturing it, used a starter and other electrical components manufactured by GM and a starter which had been rebuilt by defendant Motor and Ignition Service. It states causes of action in negligence, strict liability and breach of warranty against each of the three defendants. GM's motion seeks summary judgments as to the negligence and strict liability causes stated against it in counts IV and V, respectively. The only damages, which are alleged in the complaint and for which plaintiff seeks recovery, are for the tractor itself.

For its motion, GM relies on *Rem Coal Company Inc. v. Clark Equipment Company,* 386 Pa. Super. 401, 563 A.2d 128 (1989), which held that negligence and strict liability causes of action are not stated where the only damage is to the product itself. Plaintiff contends that *Rem Coal* is distin-

guishable because it did not deal with the manufacturer of a component part, as is the case here with GM and its starter and other electrical components. In its reply brief, GM refers us to *King v. Hilton-Davis,* 855 F.2d 1047 (3d Cir. 1988), which dealt with the negligence and strict liability of a supplier of a component part. We believe that GM's position accurately reflects the current status of Pennsylvania law on this issue.

In *Rem Coal* our Superior Court, adopting the standard unanimously adopted by the U.S. Supreme Court in *East River Steamship Corp. v. Transamerica Delaval Inc.,* 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed. 2d 865 (1986), and presenting a comprehensive analysis of the issue, held that Pennsylvania's breach of warranty law provides the complete remedy to a disappointed purchaser for the loss of a commercial product and stated as follows:

"[N]egligence and strict liability theories do not apply in an action between commercial enterprises involving a product that malfunctions where the only resulting damage is to the product itself." *Rem Coal Company Inc. v. Clark Equipment Company,* 386 Pa. Super. 401, 412-3, 563 A.2d 128, 134 (1989).

The basic rationale of the *Rem Coal* holding is that the goals of tort theories of recovery are not implicated in a product malfunction case involving only an economic loss and that the public policy to provide the public protection from unsafe products is not involved where there is damage only to the product and no personal injury or damage to other property.

We agree with plaintiff that *Rem Coal* did not involve a component part manufacturer, but we

believe that its holding can rationally be extended to the case before us. That is, we believe that it is much more logical to apply the holding in *Rem Coal* than to draw the distinction which plaintiff makes. Allowing that distinction would allow plaintiff greater rights as to a component part manufacturer than as to the final product manufacturer.

This is exactly the rationale which the Third Circuit Court of Appeals set forth in *King v. Hilton-Davis,* 855 F.2d 1047 (3d Cir. 1988), when it stated, at 1051-2, as follows:

"We perceive no principled basis for affording the purchaser of a defective product greater relief against the manufacturer of a component part that has rendered a product defective than against the manufacturer of the assembled defective product. This counsels against looking to the component part to define the product and 'economic loss.' As the Court of Appeals for the Fifth Circuit recently observed:

" 'We see no rational reason to give the buyer greater rights to recover economic losses for a defect in the product because the component is designed, constructed, or furnished by someone other than the final manufacturer. The buyer ordinarily has no interest in how or where the manufacturer obtains individual components. The buyer is usually interested in the quality of the finished product, and is content to let the manufacturer decide whether to do all the work or delegate to others.' 825 F.2d 925, at 929."

The rationale of the *King* holding is that, where the purchaser of a defective product sues to recover damages for the defect, the relevant product is what the purchaser bargained for, i.e., the whole product

and not its individual component parts, and that his remedy is limited to a contract-based recovery.

The *King* court noted that, in *Aloe Coal Co. v. Clark Equipment Co.*, 816 F.2d 110 (3d Cir. 1987), cert. denied, ___ U.S. ___, 108 S.Ct. 156, 98 L.Ed. 2d 111 (1987), it had predicted that the Pennsylvania Supreme Court would adopt, as Pennsylvania law, the U.S. Supreme Court's holding in *East River.* Even though that issue has not reached the Pennsylvania Supreme Court, the prediction was accurate to the extent that our Superior Court did so, i.e., adopt the *East River* holding, in *Rem Coal,* and in doing so, noted the *Aloe Coal* and *King* holdings and noted that the *Aloe Coal* holding agreed with its holding in *Rem Coal.*

The *King* court used its earlier prediction as a basis for predicting that Pennsylvania law would also ultimately encompass the *King* holding as to manufacturers of component parts. The accuracy of the earlier prediction, based on the *Rem Coal* analysis and holding, gives us confidence that *King* would accurately state Pennsylvania law on the component part issue, when it ultimately reaches our appellate courts. Furthermore, we believe that the *King* rationale and holding make eminent sense.

With this conclusion, we believe that GM is entitled to a judgment as a matter of law on counts IV and V of the complaint. The parties agree on the facts involved and thereby concede that there is no genuine issue as to any material fact. See Pa.R.C.P. 1035(b) and *Washington Federal Savings and Loan Association v. Stein,* 357 Pa. Super. 286, 288-9, 515 A.2d 980, 981 (1986).

Accordingly, we enter the following

## ORDER

And now, April 12, 1990, for all of the reasons stated in the foregoing opinion, the motion for partial summary judgment of defendant, General Motors Corporation, is granted, and counts IV and V of the complaint are dismissed.